**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GILBERT GALINATO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10 C 3376 |
| ) | |
| SHAUN DONOVAN, Secretary, U.S. ) | Judge Sharon Johnson Coleman |
| Department of Housing and Urban ) | |
| Development, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gilbert Galinato filed a complaint alleging discrimination and retaliation by his employer the U.S. Department of Housing and Urban Development. The government moves for summary judgment on all claims. This Court heard oral arguments in this matter on June 21, 2012. Having considered the submissions of the parties, the arguments made in court, this Court grants the government's motion for the reasons stated below.

Before addressing the merits of the motion for summary judgment currently under consideration, the Court will first address Galinato's compliance with Local Rule 56.1. LR 56.1(b)(3) states that each party opposing a motion for summary judgment shall serve and file responses to each of the numbered paragraphs in the moving party's statement of undisputed material facts and in the case of disagreement, include specific references to the parts of the record, and other supporting materials. Here, Galinato filed his own statement of additional facts in accordance with LR 56.1 (b)(3)(C), but failed to comply with LR 56.1 (b)(3)(A) and (B). Failure to comply with LR 56.1(b) does not result in an automatic grant of summary judgment, but the Court may accept as true all the material facts set forth in the moving party's LR 56.1

statement of facts. *See FTC v. Bay Area Bus. Council, Inc*., 423 F.3d 627, 633 (7th Cir. 2005). Accordingly, the Court accepts as true all facts put forth by the government, which are not specifically contradicted by Galinato with citations to the record.

**Background**

The following facts are undisputed. Gilbert Galinato (Asian Filipino, over age 40) began working for the U.S. Department of Housing and Urban Development ("HUD") in 1990 as a GS-5 single-family loan assistant. Galinato was promoted in 1994 as a GS-7 single-family loan specialist and was promoted later that year to a GS-9. In 1998, Galinato was promoted to a GS-12 position as a public housing revitalization specialist. Galinato currently holds that position. Galinato's current position has a promotion potential only to GS-12. If Galinato wanted to be promoted to a GS-13 position or higher, Galinato had to apply for such a position and be selected after competing with other applicants. Galinato last applied for a GS-13 position in 2000; he was not selected for the position.

In July 2007, Galinato filed an EEOC complaint alleging discrimination on the basis of his race, national origin, age, and disability, and retaliation because he was not promoted between 1992 and 2000, and in 2007.[1] Galinato claims that he was treated worse than other employees who started working with him at HUD in 1990 because they have since been promoted to GS-13 and he has not. Galinato also claimed that he was discriminated on the basis of disability because he suffers from seizures and convulsions. Galinato claims that he was discriminated against on the basis of this disability when his supervisor assigned him to inspect houses in 1994 or 1995. However, Galinato never asked his supervisor to be excused from

---

[1] Galinato filed three prior EEOC complaints while working at HUD.

inspecting houses because of his seizures. Galinato's supervisor was never made aware of any medical restrictions. Moreover, Galinato never requested an accommodation.

Galinato signed an affidavit in October 2007 as part of his EEO complaint. In the affidavit, Galinato questioned why management did not stop his supervisors from discriminating against him. Galinato further stated: "by avoiding to confront them (supervisors) doesn't it mean they are tolerating them to perpetuate the same mistakes until there is a brawl, murder, or death? ... without anybody to talk to or counseling could make a person go crazy and may commit murder or commit suicide." Based on these remarks in his affidavit, HUD placed Galinato on administrative leave until a psychological evaluation could be completed.

A HUD contract psychiatrist conducted an evaluation of Galinato and determined that his statements were threats warranting concern. The psychiatrist recommended that Galinato not return to work until he participated in a treatment program and until he was released to return to work by his own therapist.

Following the evaluation, Galinato met with his supervisors and an employee from human resources. At the meeting, Galinato made remarks that he did not believe in justice anymore. Galinato also discussed the recent shooting of the family of a federal judge and stated that the shooting was justified because the judge had previously called the man responsible crazy. After the meeting, Galinato was placed on indefinite administrative leave until he was released to return to work. Galinato was ultimately released to return to work on March 29, 2008, and he returned to work some time after April 14, 2008.

In March of 2008, Galinato amended his EEOC complaint to include a retaliation claim based on his supervisor's decision to place him on administrative leave pending a psychological evaluation due to the threatening statements made in his EEOC affidavit and the threatening

remarks made to supervisors at the January 2008 meeting. On March 30, 2009, the Equal Employment Opportunity Commission denied Galinato's claims in his 2007 EEOC complaint. Galinato appealed the decision, which was denied after reconsideration by the EEOC on February 25, 2010. On June 2, 2010, Galinato filed his complaint with this Court alleging discrimination based on race, national origin, age, and disability as well as retaliation.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**Discussion**

The government moves for summary judgment on all claims. First, the government argues that Galinato's discrimination claims based on alleged actions taken during his employment between 1992 and 2000 are untimely because Galinato did not report the alleged discriminatory conduct to an EEOC counselor within the 45 day period prescribed in 29 C.F.R. § 1614.105(a)(1). Prior to filing a complaint in federal district court, an aggrieved federal employee, who believes he or she has been subjected to discrimination on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult an EEO

counselor. 29 C.F.R. § 1614.105(a). Accordingly, "federal employees must notify an EEO counselor of any discriminatory conduct within forty-five days of its occurrence in order to later assert a Title VII claim based on that conduct." *Williams v. West*, 1998 WL 904722 (7th Cir. 1998). Here, it is undisputed that Galinato sought EEO counseling on March 22, 2007, for the alleged discriminatory actions from 1992 to 2000. Since his claims from this time period date from well before the 45 day period proceeding March 22, 2007, they are untimely.

Galinato contends that his discrimination claims relating to actions taken between 1992 and 2000 are not time barred because those claims are compensation claims subject to The Lilly Ledbetter Fair Pay Act of 2009. The Act amended "Title VII of the Civil Rights Act of 1964 by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision." *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024-1025 (7th Cir. 2011). The Act provides "that an "unlawful employment practice" occurs in the following situations: (1) when a discriminatory compensation decision or other practice is adopted, (2) when an individual becomes subject to a discriminatory compensation decision or other practice, and (3) when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." *Id.*, citing 42 U.S.C. § 2000e-(5)(e)(3)(A) (internal quotation marks omitted).

The government argues that Galinato's discrimination claims between 1992 and 2000 are not subject to the Lilly Ledbetter Fair Pay Act of 2009 because his compensation claims are based solely on the agency's failure to promote him to GS-13 and a decision not to promote is not an unlawful employment practice under the Act. In interpreting the phrase "discriminatory compensation decision or other practice," courts have concluded that an employer's "decision

5

whether to promote an employee to a higher paying position is not a 'compensation decision or other practice' within the meaning of that phrase" in the Act. *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir., 2010) (holding that the Act did not revive the employee's untimely claims under the Age Discrimination in Employment Act). In *Schuler*, the D.C. Circuit recognized that "in employment law the phrase 'discrimination in compensation' means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position." *Id*. at 374.

In his Complaint, Galinato alleges that he was discriminated against because he "was denied promotion to GS-13 and received less compensation." Complaint ¶ 10(b). Galinato further alleges a "continuing violation of compensation discrimination through non-promotion." Complaint ¶ 12. Since Galinato's compensation claims are based solely on the HUD's alleged failure to promote him, the Lilly Ledbetter Fair Pay Act does not revive Galinato's otherwise untimely claims.

Even if Galinato's claims of discrimination from 1992 to 2000 were timely, the government argues that it is entitled to summary judgment on those claims and Galinato's retaliation claim because he cannot establish a prima facie case for discrimination based on national origin or race. Under Title VII of the Civil Rights Act of 1964, it is illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove illegal discrimination in violation of Title VII either directly or indirectly. *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009). Under the indirect burden-shifting method of proof established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff may establish a prima facie case of discrimination by proving that: "(1) [he is] a member of a protected class; (2) [he was] performing [his] job satisfactorily; (3) [he] suffered an adverse employment action; and (4) similarly situated employees outside of [his] protected class were treated more favorably." *Id*.

If a plaintiff establishes a prima facie case of discrimination, then "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id*., citing *McDonnell Douglas Corp.,* 411 U.S. at 802. (internal quotation marks omitted). If the employer meets its burden of production, then the plaintiff must establish that the employer's proffered reasons are a pretext for unlawful discrimination. *Id*.

Claims for discrimination under Title VII, whether based on race or national origin are subject to the same requirements and the undisputed record shows that Galinato cannot establish either an adverse employment action or any evidence that similarly situated individuals were treated differently. Specifically, Galinato cannot establish that he suffered an adverse employment action when he was not promoted to a GS-13 position because Galinato failed to apply for a GS-13 position. HUD regularly promoted Galinato until he reached the GS-12 level, the highest grade in the position he holds. It is undisputed that Galinato had to apply for a GS-13 position if he wanted to be promoted beyond GS-12. Accordingly, Galinato did not suffer an adverse employment action when he was not promoted to a GS-13 position.

Additionally, Galinato has not established that similarly situated employees outside of his protected class were treated more favorably. Galinato asserts that Steven Di Pietro is a similarly situated employee outside of his protected class who was treated better. However, Galinato fails to present sufficient evidence to create a question of fact as to whether Di Pietro is a similarly situated employee treated more favorably. Galinato admits that he does not know Di Pietro's

educational background, EEO history, or prior work experience. Galinato further admits that he did not have the same supervisor as Di Pietro. Galinato failed to produce any evidence that Di Pietro was promoted or paid more than he was. Accordingly, Galinato has failed to establish that Di Pietro is a similarly situated employee who was treated more favorably than he was. Therefore, Galinato fails to create an issue of fact on the issue of race or national origin discrimination under Title VII.

Galinato's claim for age discrimination fails for the same reasons as his other discrimination claims. The Age Discrimination in Employment Act, which outlaws discrimination on the basis of age, also requires a plaintiff to show adverse employment action and that he was treated differently than similarly situated individuals outside his protected class. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 320-321 (7th Cir. 2003), citing 29 U.S.C. § 623(a)(1). As discussed above, the undisputed record shows that Galinato cannot show an adverse employment action and has not presented sufficient evidence that similarly situated individuals outside his protected class were treated differently.

The government also moves for summary judgment on Galinato's disability discrimination claim. Galinato claims that he is disabled due to convulsions or seizures and that HUD discriminated against him on that basis when he was assigned in 1994 or 1995 to inspect houses. To the extent that his claim of disability discrimination is based solely on events in 1994 or 1995, Galinato's claim is time barred as explained above.

The Americans with Disabilities Act and the Rehabilitation Act "prohibit an employer from discriminating against a qualified individual with a disability because of the disability." *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). A plaintiff may establish a prima facie case of disability discrimination under either the ADA or the Rehabilitation Act by

showing: "(1) that she suffers from a disability as defined in the statutes; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability." *Id*. A plaintiff may establish that he or she has a disability by showing that he or she has either: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

If an employee is a qualified individual with a disability, then the employer is obligated to provide a reasonable accommodation. *Jackson*, 414 F.3d at 812. In order to determine the appropriate accommodation for a qualified individual with a disability, the employer and employee must engage in an interactive process. *Id*. at 813. In general, the burden lies with the employer to explore reasonable accommodations. *Id*. In assigning responsibility for a breakdown in the interactive process, the Seventh Circuit has held that "when the parties are missing information... that can only be provided by one of the parties... the party withholding the information may be found to have obstructed the process." *Id*.

Even if his disability discrimination claim was timely, HUD is still entitled to judgment as a matter of law. The undisputed facts show that Galinato never requested a reasonable accommodation from HUD. Nor did Galinato ever request an alternative assignment from his supervisor because of his seizures. Moreover, Galinato never provided medical documentation to his employer to support a request for an accommodation. Therefore, Galinato fails to present evidence to create a genuine issue of fact on his disability claim.

Even if Galinato could establish a prima facie case of discrimination, HUD has offered a non-discriminatory reason for not promoting him to a GS-13 position in 2007. Specifically,

HUD asserts that Galinato did not apply for a GS-13 position. It is undisputed that if he wanted to be promoted to a GS-13 position, Galinato had to apply for such a position. Galinato admitted that the last time he applied for a GS-13 position was in 2000. Since Galinato has failed to show that he was eligible for a GS-13 position in 2007, he cannot show that HUD's reason for not promoting him was a pretext for illegal discrimination.

Lastly, the government moves for summary judgment on Galinato's retaliation claim. Galinato claims that he was retaliated against when he was placed on administrative leave after he made threatening statements in his EEOC affidavit and at a meeting with supervisors. Galinato claims that the reason he was placed on administrative leave was because of his EEOC activity.

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer to "discriminate against an employee because he has opposed any practice made an unlawful employment practice by the statute or because he has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Brown v. Illinois Dept. of Natural Resources*, 499 F.3d 675, 684 (7th Cir. 2007), quoting 42 U.S.C. § 2000e–3(a) (internal quotation marks omitted). A plaintiff may establish a prima facie case of retaliation under either the direct or indirect methods of proof. *Id*. Under the indirect method of proof, a plaintiff must establish that: "(1) after filing a charge [the employee] was subject to adverse employment action; (2) at the time, [the employee] was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action." *Id*.

Here, there is no question of material fact on the issue of retaliation. Galinato fails to present any evidence from which a trier-of-fact could reasonably find in his favor. Galinato cannot establish that he was subjected to an adverse employment decision when he was placed

on administrative leave for making threatening comments. Galinato does not deny making the statements in his affidavit or to his supervisors. The undisputed record shows that HUD's decision to place Galinato on administrative leave was supported by its contract psychiatrist, who stated that Galinato's statements constituted threats that warranted concern. The psychiatrist further opined that Galinato should not return to work until he participated in a treatment program and until his own therapist recommended that he return to work. Galinato has not identified any employees who like him made threatening statements and were not placed on administrative leave. Therefore, Galinato has not put forth any evidence that he was treated worse than other similarly situated employees who engaged in EEOC activity. Accordingly, Galinato has not established a prima facie case of retaliation for his employer's decision to place him on administrative leave for the threatening comments made in his EEOC affidavit and to his supervisors.

Even if this Court found that Galinato could establish a prima facie case of retaliation, Galinato has not established that HUD's proffered reason for placing him on administrative leave is a pretext for unlawful discrimination. HUD asserts that it was concerned about the threatening statements made in Galinato's EEOC affidavit and the statements made to supervisors. It is undisputed that HUD ordered Galinato be placed on administrative leave until a psychological evaluation could be completed. HUD's contract psychiatrist, who conducted the evaluation, determined that Galinato's threats warranted concern. The contract psychiatrist further determined that Galinato should not return to work until he participated in a treatment program and until his own therapist recommended that he return to work. Galinato fails to offer a plausible explanation to his supervisors for his statements. Accordingly, Galinato cannot show that HUD's reason for placing him on administrative leave is a pretext for unlawful

discrimination. Therefore, HUD is entitled to judgment as a matter of law on Galinato's retaliation claim as well.

Based on the foregoing, no genuine issue of material fact exists as to any of Galinato's claims and the government is entitled to judgment as a matter of law. The Court grants HUD's motion for summary judgment.

IT IS SO ORDERED.

Date: July 31, 2012

Entered: _____

Sharon Johnson Coleman